IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION

| | |
|---|---|
| IMARI TAYLOR, <br><br> Plaintiff, <br><br> v. <br><br> AMAZON.COM, INC.; <br> AMAZON.COM SERVICES, LLC; <br> SUZHOU TENGLI MAOYI <br> YOUXIAN GONGSI d/b/a Cenmesy <br> and / or Poofzy, <br><br> Defendants. | C/A no. 7:25-cv-11131-DCC <br><br><br> **FIRST AMENDED COMPLAINT** <br> **(Jury trial demanded)** |

Plaintiff amends her complaint under Rule 15(a)(1)(A), FRCP, and alleges:

## I.      Introduction:

1.      On September 29, 2024, Plaintiff Imari Taylor, a 17-year-old resident of Spartanburg County, South Carolina, was severely burned when rubbing alcohol was poured onto a portable fire pit sold by Defendants. When a family member attempted to relight the fire pit, fuel vapors ignited and flashed back inside the rubbing alcohol container. The resulting pressure buildup inside the rubbing alcohol container caused a phenomenon known as flame jetting and sprayed burning rubbing alcohol onto Imari. The spraying of burning rubbing alcohol onto Imari resulted in severe burns to her body including, inter alia, her face, upper extremities, right leg, and abdomen.

1

## II.     Parties and Jurisdiction:

2.     Plaintiff Imari Taylor is a citizen and resident of Spartanburg County, South Carolina.

3.     Defendant Amazon.com, Inc. ("AMZ") is a Delaware corporation with its principal place of business in the state of Washington and may be served with process through its registered agent, Corporation Service Company, 251 Little Falls Drive, Wilmington, DE 19808.

4.     Defendant Amazon.com Services, LLC ("AMZS") is a Delaware entity with its principal place of business in the state of Washington and may be served with process through its registered agent, Corporation Service Company, 251 Little Falls Drive, Wilmington, DE 19808.

5.     Defendant AMZ is the parent corporation and Defendant AMZS is its wholly owned subsidiary that is most often the contracting party in the Amazon Business Solutions Agreement and the Fulfillment by Amazon service terms which are described more fully below.

6.     For sake of brevity, Defendants AMZ and AMZS are referred to collectively below as "Amazon."

7. Defendant Suzhou Tengli Maoyi Youxian Gongsi d/b/a Cenmesy ("Cenmesy"), upon information and belief, is a foreign entity and a registered seller on Amazon.com.

8. Under the "Integrity, Notification, and Fairness in Online Retail Marketplaces for Consumers Act," Amazon is required to verify the correct identify of this seller.

9. On Cenmesy's Amazon.com storefront, Cenmesy's detailed seller information is listed as: "**Business Name:** suzhoutenglimaoyiyouxiangongsi; **Business Address:** 东旺路43号4号楼4楼474室，苏州, 工业园区, 江苏, 215000, CN."

10. This address is associated with an importer, Suzhou Tengli Maoyi Youxian Gongsi, who has imported tabletop firepits products to the United States using shipping code AMZD, the standard carrier alpha code for Amazon China / Amazon Global.

11. Defendant Cenmesy, via Amazon China / Amazon Global logistics, has imported tabletop firepit products to Amazon Fulfillment Center, code LGB8, at 1568 N Linden Ave, Rialto, CA 92376.

12. Defendant Cenmesy imported the "Poofzy" brand tabletop firepit that the Amazon defendants sold to the plaintiff's parents.

3

13. Plaintiff and the Defendants are of different citizenship and no Defendant is a citizen of South Carolina.

14. The amount in controversy exceeds $75,000.00 exclusive of interest and costs.

15. This court has jurisdiction under 28 U.S.C. § 1332.

16. This court has personal jurisdiction over these Defendants based on the following in-state conduct:

a. Transacting business in South Carolina including by marketing to South Carolina citizens via an online marketplace, processing consumer transactions with Plaintiff and other South Carolina citizens, operating fulfillment warehouses / centers in South Carolina, and collecting and remitting South Carolina state sales tax on all sales made to customers in the state of South Carolina;

b. Contracting to ship products to South Carolina by processing a consumer transaction with Cenmesy and shipping products to Plaintiff's family in South Carolina;

c. The distribution of goods to South Carolina with the knowledge and reasonable expectation that those goods would be used in South Carolina; and / or

d. Owning property and doing business in South Carolina.

### III.     Factual Allegations:

17.     Cenmesy manufactures, markets, distributes, and / or sells portable tabletop fire pits including the Poofzy Portable Fireplace Indoor Outdoor, Table Top Firepit at issue in this case ("subject fire pit").

18.     Amazon markets, sells, processes, warehouses, and/or ships Cenmesy's products, including the subject fire pit.

19.     Amazon provide an online marketplace through which it partners with users like Cenmesy to sell products to consumers in the U.S.

20.     To the consumer, like Plaintiff's mother, Amazon is the most critical part of the transaction – serving as the exclusive and sole means of marketing, communication, distribution, returns, or customer service contact.

21.     Amazon is registered in South Carolina as a retailer under the Sales and Use Tax Act.

22.     Cenmesy and Amazon operate under the Amazon Services Business Solutions Agreement ("BSA").

23.     Cenmesy, under the terms of its BSA, participated in Amazon's Fulfillment by Amazon program as well as its "Selling Partner" Application Programming Interface.

### a.     Fulfillment by Amazon

24.     Amazon operates the e-commerce website Amazon.com.

25. Amazon sells and distributes consumer products on Amazon.com both as a retailer and as a distributor for Amazon affiliates and its selling partners under its Fulfillment by Amazon ("FBA") program.

26. Amazon's "Selling Partners" who participate in FBA deliver their products to Amazon's fulfillment centers rather than directly to consumers.

27. Amazon refers to these fulfillment centers as its "distribution centers." *See In the Matter of Amazon.com, Inc.*, (Dec. 14, 2023) (CPSC Dkt. No. 21-2).

28. Once Amazon receives delivery of a product into its fulfillment center, Amazon stores the product until it is sold to a consumer.

29. If a particular product is not being held in an Amazon distribution center, Amazon does not allow that product to be purchased on Amazon.com.

30. Amazon uses its own technology to track, move, commingle, and ship FBA products to customers.

31. When a consumer orders an FBA product, Amazon locates the product in its warehouse, fulfills the order, and arranges shipment directly to the consumer.

32. Amazon processes all customer payments for FBA products, deducts its fees, and remits balances to sellers.

33. Amazon issues receipts, order confirmations, and purchase acknowledgments in its own name for FBA transactions.

34.    Amazon applies and enforces its Fair Pricing Policy to the prices set by third-party sellers, including the power to penalize or suspend sellers.

35.    Amazon requires third-party sellers to agree that Amazon alone will provide customer service for FBA products.

36.    Amazon determines whether a customer will receive a refund, replacement, or adjustment for an FBA product.

37.    Amazon requires sellers to reimburse Amazon for refunds, replacements, and adjustments Amazon provides to consumers in Amazon's sole discretion.

38.    Amazon enforces reimbursement by reversing credits owed to sellers or charging the seller's credit card or bank account.

39.    If a customer returns a product, Amazon decides whether to dispose of the product, return it to seller inventory, or resell it through its Amazon Warehouse program.

40.    Amazon contractually reserves the right to destroy, recycle, donate, or liquidate inventory stored in its fulfillment centers.

41.    When Amazon disposes of inventory, title to the product transfers to Amazon or its designee, and Amazon may retain proceeds from disposal.

42.    Amazon retains constructive title to products stored in its fulfillment centers through its contractual power to withhold distribution, seize, resell, or destroy inventory.

43.    Amazon requires third-party sellers to notify Amazon of any recalls or potential recalls and to cooperate with Amazon in executing recalls.

44.    Amazon requires its selling partners to reimburse Amazon for all costs Amazon incurs in connection with recalls or safety alerts.

45.    Amazon alone possesses the contact information of consumers who purchase FBA products and therefore controls recall notifications.

46.    Consumers perceive they are purchasing FBA products from Amazon because Amazon controls the website, checkout process, packaging, and customer communications.

47.    Many FBA sellers are foreign entities that are unknown to consumers and Amazon is the only visible participant in the seller / distribution chain.

48.    Amazon profits from every FBA transaction through referral fees, fulfillment fees, and other charges.

49.    Amazon is in the best position to monitor and regulate the safety of the products it sells and distributes because of its centralized control over listing, storage, fulfillment, pricing, payment, customer service, returns, and recalls.

50.    Amazon's FBA participation agreement is an adhesion contract that unilaterally imposes these terms on sellers without negotiation including those that self-servingly relate to title.

8

51. Through these agreements and practices, Amazon exerts substantial control over FBA products in a manner indistinguishable from a traditional seller or distributor.

52. Unsurprisingly, the Consumer Product Safety Commission ("CPSC") deems Amazon a distributor because it holds FBA products for sale and delivers them into ecommerce. *See In the Matter of Amazon.com, Inc.*, CPSC Docket No. 21-2 at 27 (July 29, 2024).

53. Specifically, the CPSC rejected "Amazon's argument that it is merely a 'third-party logistics provider'" as a misrepresentation of "the far-reaching control Amazon exercises in its Fulfilled by Amazon program." *Id*.

54. This conclusion stands to reason and is supported by the fact that "Amazon is a direct link in the chain of distribution, acting as a powerful intermediary between the third-party seller and the consumer". *Bolger v. Amazon.com, LLC*, 53 Cal. App. 5th 431, 438 (Cal. Ct. App. 2020).

### b.     Substantial control over selling partners

55. Other provisions of the BSA, not just the FBA services, exemplify the control exercised by Amazon over its selling partners, including Cenmesy.

56. Through the BSA, Amazon required Cenmesy to price goods sold on Amazon.com to be at least as favorable to Amazon site users as the most favorable terms offered by Cenmesy elsewhere.

57.    Amazon provided processing for all goods sold by Cenmesy including the subject fire pit.

58.    Amazon charged fees for its role in these transactions including for facilitating the product information display, acting as the direct conduit between the plaintiff's mother and Cenmesy, processing payment for the subject fire pit, collection of and remission of South Carolina sales tax to the S.C. Department of Revenue, and the  shipment of the Cenmesy fire pit at issue.

59.    Amazon also charges referral fees – a percentage of the sales price per item sold by its selling partners like Cenmesy.

60.    Amazon charged Cenmesy a referral fee for the sale of the subject fire pit to Plaintiff's mother.

61.    Under the BSA, Amazon requires all communications between Cenmesy and purchasers of Cenmesy products to go through Amazon.

62.    Under the BSA, Amazon reserve the right to control in its sole discretion the content, appearance, design, functionality and all other aspects of the product pages for Cenmesy products.

63.    Under the BSA, Amazon requires Cenmesy to maintain liability insurance naming Amazon as an additional insured for products sold on Amazon's marketplace and distributed by Amazon.

10

64.     Under the BSA, Amazon requires Cenmesy to indemnify it for any liability arising from Cenmesy products sold through Amazon.com.

65.     Under the BSA, Amazon requires Cenmesy to ensure and certify that its products comply with applicable laws and notify Amazon of any public or private recall of their products.

66.     Under the BSA, Amazon has the power to require Cenmesy to provide Amazon with any product certification or product standards certification applicable to Cenmesy's products.

67.     Amazon Services' marketplace lists products sold by Amazon, Amazon affiliates, and its selling partners.

68.     Amazon Payments, Inc.—an Amazon affiliate referenced as "we" in the BSA—acts as Amazon's agent for processing payments, receiving and holding sales proceeds, and remitting funds.

69.     The BSA provides that Amazon will receive all sales proceeds on the seller's behalf and has exclusive rights to do so.

70.     Buyers, like plaintiff's mother, satisfy their payment obligations to Amazon or its selling partners at the moment Amazon receives the sales proceeds.

71.     Amazon holds sellers' sales proceeds in an account with Amazon Payments and may commingle, invest, or otherwise use those funds before disbursement, with no interest owed to sellers.

11

72. Amazon remits sales proceeds to sellers on a biweekly (or more frequent at Amazon's option) schedule after deducting Amazon's fees.

73. Amazon's selling partners must pay Amazon a "Referral Fee" calculated as a percentage of the sales price, which directly ties Amazon's compensation to every third-party sale.

74. The BSA prohibits Amazon's selling partners from receiving or requesting payments directly from customers and requires all buyer communications to occur through Amazon's tools.

75. The BSA requires its selling partners to price products for Amazon users at least as favorably as any other sales channel, thereby advantaging sales through Amazon's marketplace.

76. Amazon Fulfillment Services, Inc.—another affiliate—operates Amazon's distribution centers facilitates the FBA storage, packaging, shipping, and delivery for Amazon's selling partners.

77. At all times, Amazon is the only party a buyer encounters during a sales transaction because Amazon conducts the transaction, processes payment, holds the funds, and remits net proceeds to the seller.

78. The S.C. Court of Appeals has previously held that Amazon is "engaged in the business of selling" under the S.C. Code of Laws for purposes of South Carolina's sales and use tax code.

79. The court held Amazon is a "seller" under S.C. Code § 12-36-70 because "seller" includes persons selling tangible property owned by others.

80. The court held these transactions are "sales" under § 12-36-100 because Amazon effects the transfer of goods and receives consideration regardless of title or possession at the instant of payment.

81. The court treated Amazon Services and Amazon Payments as a single "person" acting as a unit under § 12-36-30 for tax purposes, rejecting formal "separate entity" arguments.

82. The court described Amazon's role as including parameters on pricing and marketplace control that ensure Amazon profits from every sale and drives sales to its marketplace.

83. The court declined to credit corporate-form arguments designed to shift responsibility to affiliates where the BSA and transaction realities show Amazon controls the funds flow and customer interface.

84. The court affirmed that Amazon's compensation and control are aligned with the marketplace's overall sales volume, not merely discrete "services" to its selling partners.

85. The court's analysis confirms Amazon's substantial control over listing, pricing parameters, payments, communications, and fulfillment, rendering it functionally indistinguishable from a seller in the stream of commerce.

### c.     Amazon's knowledge of the hazard

86.     Amazon independently monitors safety recalls and other safety issues related to products sold on their online marketplace.

87.     Amazon assumes the duty to make sure products sold on its online marketplace are safe including the subject fire pit.

88.     Prior to providing the subject fire pit to the plaintiff's family, Amazon was aware of Australia's Consumer Good (Decorative Alcohol Fueled Devices) Safety Standard (5 July 2017) that provides that decorative alcohol fueled devices (including table top fire pits) supplied after 15 October 2017 in Australia must be supplied with:

> a.  a fuel container that incorporates a flame arrester; or
>
> b.  an automatic fuel pump system for the device.

89.     Further the Australian Standard requires warnings that include "Filling an alcohol fueled device while lit has caused severe burns.  When refilling only use containers with a flame arrestor."

90.     Prior to providing the subject fire pit to the plaintiff's family, Amazon was aware of Health Canada's October 9, 2019 information update on flame jetting that provides in part:

91.     Health Canada is informing consumers of the serious fire and burn risks associated with flame jetting occurrences that may result from the use of certain

14

containers of pourable alcohol-based fuels and certain firepots that use those fuels.

Fire pots (also referred to as fireburners, portable fireplaces, fire bowls, pation

burners, flamepots, firelights, or table top fire pits) are portable decorative lighting

accents that support open flame burning…Flame jetting incidents often involve

multiple victims and, in Canada, have resulted in fatalities and very serious

injuries…Do not use pourable fuel containers without a flame arrestor."

92.     Prior to providing the subject fire pit to the plaintiff's family, Amazon was

aware of ASTM F3363-19 which applies to the subject fire pit and provides in part:

"When pouring flammable liquids from closed neck containers, use flame

mitigation devices to reduce the risk of flame jetting."

93.     In 2021, Amazon was sued in the case of Renee Farell v. Amazon and in that

case the Plaintiff claimed to have been severely burned when utilizing a table top

fire place.

94.     In 2022, Amazon was sued in the case of Jelinek & Garcia v. Amazon in that

case the Plaintiffs claimed to have been burned when fueling a fire pit and alleged

that the fuel container at issue was dangerous because it lacked a flame arrester

(sic).

95.     In 2022, Amazon was sued in the case of Kalman & Rivka Benjamin v.

Amazon and in that case the Plaintiff alleged to be burned when using a table top

fire pit and the Plaintiff alleged that Amazon knew or should have known of the

15

risk of flame jetting explosions occurring because fuel vaports trails igniting from heated fire pits and that Amazon knew of should have known about the dangers of fueling fire pits from containers without flame arrestors.

96.    Prior to providing the subject fire pit to the plaintiff's family, Amazon was aware of the CPSC's January 17, 2023 release on flame mitigation devices that provides in part:

> Flame mitigation devices, such as flame arrestors, protect aagainst flame jetting and container rupturing.  Flame jetting is a phenomenon where an external ignition source- such as an open flame-causes a sudden ignition of fuel within a container and forcefully expels burning vapor and liquid from the mouth of the containter, resulting in a blowtorch-like effect…Flame mitigation devices will be required on containers sold pre-filled with liquid fireplace fuels.

97.    In February 2023, Amazon was sued in the case of Samantha Loving v. Amazon in that case the Plaintiffs claimed to have been severely burned when using a table top fire pit.

98.    In July 2023, Amazon was sued in the case of Christine Farina v. Amazon in that case the Plaintiff claimed to have suffered severe burns when using a tabletop fire pit.

99.    Prior to providing the subject fire pit to the plaintiff's family, Amazon was aware of Health Canada's September 28, 2023 information update on Flikfire Fire Pots that provides in part:  The portable firepots also do not have the required labelling according to the ASTM F3363-19 Standard Specifications for Unvented

16

Liquid Gel/Fuel Burning Portable Devices.  These labelling requirements are necessary to inform consumers about fire or burn hazards, including flame jetting….The lack of appropriate labelling and hazard information could contribute to a flame jetting incident and/or unintentional exposure to the product and lead to serious illness, injury or death.

100.   The subject fire pot also does not comply with the required labelling according to the ASTM F3363-19 standard.

101.   Prior to the sale of the subject fire pit, Amazon knew that fuel containers that lack flame mitigation devices are susceptible to flashback ignitions and flame jetting.

102.   Despite this, Amazon actively encouraged consumers, like the plaintiff's family, to use rubbing alcohol (which does not come with a flame arrestor) as a fuel source for the subject fire pit despite knowledge of the CPSC's January 17, 2023 release on flame mitigation devices.

### d.      Subject product and event

103.   On October 13, 2023, Plaintiff's mother, Melissa Massey, placed Amazon order number 113-0624944-0945859 for the subject fire pit.

104.   Amazon then notified Cenmesy of the order and required Cenmesy to provide shipping information for the product.

17

105.   Plaintiff's mother received confirmation and shipping emails from Amazon regarding the transaction.

106.   The product was in the possession of Amazon at one of its fulfillment centers and was delivered to Plaintiff's family by Amazon in Amazon packaging.

107.   The subject tabletop fire pit poses a risk of serious fire and burn injuries, including death, due to flame jetting associated with the use of certain pourable fuels.

108.   In providing the subject fire pit, Amazon were aware or should have been aware of the risks the subject fire pit posed.

109.   Once the subject fire pit arrived, Plaintiff and her family used the fire pit in a foreseeable manner.

110.   After the purchase by Plaintiff's family, it was feasible for Amazon to identify and email all purchasers of Poofzy table top fire pits to warn them of dangers associated with the product and to urge them to stop using it immediately.

111.   On September 29, 2024, Plaintiff and her family were sitting by the fire pit on their back porch.

112.   At some point, the fire appeared to go out, and a family member went to refuel it with rubbing alcohol.

113.   As the family member poured the rubbing alcohol into the fire pit, the alcohol ignited and flashed back into the rubbing alcohol container.

114. The resulting pressure buildup inside the rubbing alcohol container resulted in a spraying of ignited rubbing alcohol out of the container and onto Plaintiff, who was severely burned.

115. The spraying of burning liquid alcohol onto Plaintiff resulted in catastrophic burns over a large portion of her body.

116. The subject fire pit sold by Defendants was defective and unsafe for foreseeable purposes at the time it left the control of the Defendants in that the fire pit was not sold with a fuel container containing a flame arrestor, a necessary safety device that would have prevented the ignition of the liquid fuel and the resulting injuries.

117. The subject fire pit sold by Defendants was also defective and unsafe for foreseeable purposes at the time it left the control of the Defendants in that the fire pit's warnings and instructions encouraged the use of rubbing alcohol as a fuel source without instructing the consumer to only use fuel sources containing flame arrestors, and without warning the consumer of the danger of a flashback flame jetting event.

118. Prior to the sale of the subject fire pit, the Defendants knew or should have known that fuel containers that lack flame mitigation devices are susceptible to flashback ignitions and flame jetting.

19

119.   Prior to the sale of the subject fire pit, Defendants sold bio ethanol fuel products for use in tabletop fire pits that contain flame arrestors designed to prevent the very injuries that Imari sustained.

120.   Prior to the sale of the subject fire pit, there was a wealth of information available in the public domain about flame mitigation devices, patents for flame mitigation devices from the 1800s, consumer safety articles discussing the need for flame arrestors, the catastrophic burn injuries that result from preventable fire pit flame jetting events, and the relatively inexpensive alternative designs that can prevent injuries such as those suffered by Plaintiff.

121.   Furthermore, upon information and belief, Amazon was aware of other lawsuits and other consumers who were injured by similar products involving flame jetting.

122.   Defendants were either aware of the information listed above or turned a blind eye toward and ignored this important information about the safety of products they sell.

123.   With this safety information readily available, Defendants recklessly chose to sell the subject fire pit without a fuel container with a flame mitigation device and without adequate warnings, knowing someone like Plaintiff would be catastrophically injured when around someone using the subject fire pit in a foreseeable manner.

20

124.   As a direct and proximate result of the acts and omissions of the Defendants, Plaintiff suffered severe and catastrophic burns from the burning alcohol.

125.   These injuries required reasonable and necessary medical treatment at considerable expense and will require future medical care.

126.   As a result of these injuries, Plaintiff suffered extensive physical and mental pain and suffering.

127.   Plaintiff continues to suffer emotional distress, physical limitations, disfigurement, and pain from the injuries.

128.   Plaintiff seeks to hold the Defendants accountable for the design, manufacture, sale, and distribution of a dangerously defective product that resulted in her catastrophic injuries.

## IV.    CAUSES OF ACTION:

### *One: Strict products liability as to Cenmesy*

129.   Plaintiff incorporates all prior paragraphs.

130.   Cenmesy is a seller of the subject fire pit as that term is defined in S.C. Code § 15-73-10 et seq.

131.   Cenmesy sold the subject product in a defective condition that was unreasonably dangerous to Plaintiff. Consideration for this sale was Plaintiff's mother's purchase through Amazon.

132. At the time Plaintiff was injured, the subject fire pit had not been modified or altered in any way since it was received from Amazon and Cenmesy.

133. The product was defective in design, formulation, and warning in the following respects:

a. The subject fire pit was not sold with a fuel container containing a flame arrestor, a necessary safety device that would have prevented the ignition of the liquid fuel and the resulting injuries;

b. The fire pit's warnings and instructions encouraged the use of rubbing alcohol as a fuel source without instructing the consumer to only use fuel sources containing flame arrestors and without warning of the danger of a flashback flame jetting event;

c. Any other design or warning defects revealed in discovery.

134. At the time the product was sold, feasible alternative designs existed that would eliminate the unreasonable dangerousness and risk of harm associated with the subject fire pit.

135. Had Cenmesy incorporated such alternative designs and/or included necessary warnings, Plaintiff would not have been injured.

136. As a direct and proximate result of these defects, Plaintiff was badly injured.

*Two: Strict liability as to Amazon*

137. Plaintiff incorporates all prior paragraphs.

22

138. Amazon facilitated the marketing and sale of the product in the following, but not exclusive, respects:

    a.     Sole point of purchase for the subject fire pit;

    b.     Received, accepted, facilitated, and shipped the order for the subject fire pit;

    c.     Confirmed the transaction and shipment of the subject fire pit to Plaintiff's mother;

    d.     The only point of contact for the purchase of the subject fire pit.

139. Amazon held themselves out as the face and the critical component of this transaction.

140. Amazon is the exclusive conduit between the consumer (plaintiff's mother) and Cenmesy, the designer and manufacturer of the product.

141. Amazon does not provide contact information or a domestic address for Cenmesy for purchasers like Plaintiff's family to address their product concerns.

142. Amazon is the sole contact point for this transaction.

143. In addition, the purchase of the subject fire pit was subject to Amazon's "A-to-Z Guarantee."

144. Under the "A-to-Z Guarantee," Amazon accepts responsibility for facilitating the resolution of its customer's product defect personal injury claims such as this.

23

145. Amazon is a seller of the subject fire pit as that term is defined in S.C. Code § 15-73-10 et seq.

146. With respect to the subject transaction, Amazon was also the apparent agent of Cenmesy in the following, but not exclusive, ways:

  a. Held themselves out as having the permission of Cenmesy to conduct the sale;

  b. Held themselves out as having the permission of Cenmesy to accept payment;

  c. Held themselves out as having the permission of Cenmesy to facilitate the shipment; &

  d. Plaintiff's family reasonably relied on Amazon's authority and representations in completing the transaction.

147. With respect to the subject transaction, Amazon held itself out to the consumer as the apparent agent of Cenmesy, its selling partner, and plaintiff, believing she bought the fire pit from Amazon, reasonably relied on that apparent agency.

148. Amazon sold the subject product in a defective condition that was unreasonably dangerous to end users like Plaintiff.

149. The defective condition was not apparent or known to Plaintiff's family.

24

150. At the time Plaintiff was injured, the subject fire pit had not been modified or altered in any way since its delivery.

151. The subject fire pit was defective in design, formulation, and warning in the following respects:

a. The subject fire pit sold by Defendants was defective and unsafe for foreseeable purposes at the time it left control of the Defendants in that the fire pit was not sold with a fuel container containing a flame arrestor, a necessary safety device that would have prevented the ignition of the liquid fuel and the resulting injuries;

b. The subject fire pit sold by Defendants was also defective and unsafe for foreseeable purposes at the time it left control of the Defendants in that the fire pit's warnings and instructions encouraged the use of rubbing alcohol as a fuel source without instructing the consumer to only use fuel sources containing flame arrestors, and without warning the consumer of the danger of a flashback fuel jetting event (a well-known hazard); and

c. Any other design or warning defects revealed in discovery.

152. At the time the product was manufactured, feasible alternative designs and warnings existed that would eliminate the unreasonable dangerousness and risk of harm.

153.  As a direct and proximate result of these defects, Plaintiff was badly injured.

**Three: Negligence as to Cenmesy**

154.  Plaintiff incorporates all prior paragraphs.

155.  Defendant Cenmesy, having undertaken to design, manufacture, distribute, and sell portable fire pits, had a duty to do so in a reasonably safe manner.

156.  Defendant Cenmesy breached this duty and was negligent, reckless, willful, and wanton in the following respects:

a.    Failed to exercise due care when designing, manufacturing, distributing, and selling an unreasonably dangerous fire pit;

b.    Failed to guard against hidden or latent defects;

c.    Provided inadequate warnings and/or instructions as to the hazards involving ignition of fuel vapors and flashback flame jetting;

d.    Failed to include flame mitigation devices despite their economic feasibility;

e.    Knew, or had reason to know, that the product was dangerous for its intended use;

f.    Failed to exercise that degree of care that a reasonably prudent person would have exercised under similar circumstances;

g.    Knowingly chose not to take action despite awareness of serious risk; &

h.    Being otherwise negligent as may be revealed through discovery.

157.   As a direct and proximate result of the negligence, recklessness, willfulness, and wantonness of Defendant Cenmesy, Plaintiff suffered severe and catastrophic burn injuries.

158.   As a direct and proximate result, Plaintiff has suffered severe physical pain, disability, scarring, and disfigurement; mental anguish; permanent emotional scarring; psychological trauma; and loss of enjoyment of life.

***Four: Negligence as to Amazon***

159.   Plaintiff incorporates all prior paragraphs.

160.   For the same reasons set forth above, Amazon are sellers of the subject fire pit.

161.   Amazon owed a duty to foreseeable persons like Plaintiff to exercise due care in selecting and offering products for sale through their platform.

162.   Amazon owed an assumed duty to look into and take action on reported complaints and incidents, to place relevant warnings on the product detail page and to take other actions to make sure the products it distributes are safe.

163.   Amazon breached these duties and were negligent and grossly negligent in the following additional respects:

a.   Failing to ensure the subject fire place included safety devices present on other products sold by AMZ and/or AMZS;

27

b. Failing to properly vet Sportkee and its products prior to entering into a BSA with them;

c. Failing to properly vet Sportkee's products prior to making them available for purchase on Amazon.com;

d. Failing to properly vet Sportkee's products prior to making them available for review through its reviewer program; Selling a product without sufficient warnings and without a pouring container including a flame arrestor

e. Encouraging end users to use rubbing alcohol (which comes without a flame arrestor) as a fuel source for the subject fire pit

f. Failing to investigate prior lawsuits involving consumers burned when using similar fire pits;

g. Selling the subject fire pit without required labelling according to the ASTM F3363-19 standard;

h. Selling the subject fire pit when Amazon knew or should have known it was unsafe;

i. Negligently selling or distributing the subject fire pit when Amazon knew or should have known it was unsafe; and

j. Any other negligent or grossly negligent act revealed in discovery.

164. As a direct and proximate result of these actions, Plaintiff was badly injured.

28

### *Five: Breach of Implied Warranty of Merchantability as to All Defendants*

165.   Plaintiff incorporates all prior paragraphs.

166.   Prior to and at the time of sale, Defendants impliedly warranted that the subject fire pit was properly designed and manufactured, was of merchantable quality, reasonably fit for ordinary purposes, and safe for such use.

167.   The subject fire pit was defective, unreasonably dangerous, unfit for its ordinary purposes, and did not conform to Defendants' implied warranties.

168.   As a direct and proximate result of Defendants' breach of implied warranty, Plaintiff suffered severe burn injuries and incurred recoverable damages.

### *Six:    Unfair Trade Practices Act Violations – Amazon defendants*

169.   Plaintiff incorporates all paragraphs above.

170.   The actions described above by Amazon are unfair acts in the conduct of trade or commerce.

171.   Amazon's unfair acts have caused Plaintiff to suffer ascertainable loss of money as a result Amazon's employment of unfair acts.

172.   Amazon's actions are willful violations because Amazon knew or should have known that their conduct was a violation of S.C. Code Ann. 39-5-122.

173.   Amazon's unfair acts impact the public interest as they are capable of repetition as shown by the numerous lawsuits brought against Amazon for injuries caused by table top fire pits before and after the transaction with plaintiff's mother.

29

174. As such, Plaintiff is entitled to three times actual damages, reasonable attorneys' fees and costs under the South Carolina Unfair Trade Practices Act.

## V.    CAUSATION AND DAMAGES

175. Plaintiff incorporates all paragraphs above.

176. Defendants caused Plaintiff significant injury as a result of the negligence and other tortious conduct set forth herein.

177. Plaintiff demands money damages consistent with South Carolina law for the harm inflicted, including:

a. Past and future medical care expenses;

b. Past and future lost wages and economic losses;

c. Past and future emotional distress;

d. Past and future pain and suffering and other noneconomic damages including permanent disfigurement and impairment;

e. Treble damages for any acts in violation of the Unfair Trade Practices Act; &

f. Such further damages as will be proven at trial.

178. Furthermore, Defendants' conduct in knowingly selling the fire pit without a flame mitigation device and without sufficient warnings despite knowledge of the hazard, other victims of the hazard, and the inexpensive ability to prevent such

30

injuries was reckless, willful, wanton, and without due regard for the safety of others. Punitive damages should be assessed accordingly.

## VI.     PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

A. For actual damages according to proof;

B. For compensatory damages as permitted by law;

C. For punitive damages as determined by the trier of fact;

D. For all costs of court;

E. For such other relief as is just and proper.

Signature page below.

31

Respectfully submitted,                    **DERRICK LAW FIRM**

DeShawn Mitchell
1500 Richland St Suite A
Columbia, SC 29201
T: 843.488.5102

~and~

**RICHARDSON THOMAS**

By:    _s/Chris Moore_____
Brady R. Thomas
1513 Hampton Street
Columbia, SC 29201
T: 803.281.8150
brady@richardsonthomas.com

Chris Moore (FBN 10445)
383 W. Cheves Street
Florence, SC 29501
T: 803.300.1517
chris@richardsonthomas.com

September 16, 2025                    Attorneys for plaintiff